JONATHAN D. LOEB (State Bar No. 211749)
jonathan.loeb@dechert.com
NISHA PATEL (State Bar No. 281621)
nisha.patel@dechert.com
CHARLES HSU (State Bar No. 328798)
charles.hsu@dechert.com
DECHERT LLP
3000 El Camino Real, Suite 650
Palo Alto, CA 94306
Telephone:   +1 650 813 4800
Facsimile:    +1 650 813 4848

Attorneys for Plaintiff
Tonette L. Vazquez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TONETTE L. VAZQUEZ,<br><br>                    Plaintiff,<br><br>       v.<br><br>CHAD WOLF, Acting Secretary, Department of Homeland Security (Transportation Security Administration),<br><br>                    Defendant. | Case No. 3:18-cv-07012-JCS<br><br>**SECOND AMENDED COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

**INTRODUCTION**

1. Plaintiff Tonette L. Vazquez ("Plaintiff" or "Ms. Vazquez") brings this action pursuant to Title VII of the Civil Rights Act of 1964 against Chad Wolf, in his official capacity as Acting Secretary of the United States Department of Homeland Security, Transportation Security Administration ("Defendant" or "TSA"), to remedy acts of employment discrimination, retaliation, and hostile work environment perpetrated against her.

2. On November 11, 2018, Ms. Vazquez, appearing pro se, filed the initial Complaint for employment discrimination in this case. On July 26, 2019, Ms. Vazquez, appearing again pro

se, filed a First Amended Complaint re-alleging her claims under Title VII.  On December 3, 2019, the Court appointed volunteer attorneys at Dechert LLP at the request of the Federal Pro Bono Project and stayed all proceedings for four weeks from the date of the order.  Plaintiff now, represented by pro bono counsel, files this Second Amended Complaint to allege additional facts relevant to her claims.

3. During the time that Ms. Vazquez was employed by Defendant, she was subject to constant harassment, bullying, and discrimination due to her status as an African American Latino breastfeeding mother.  Ms. Vazquez was also the target of unlawful acts perpetrated against her by Defendant in retaliation to her protected acts, including, among others, making informal complaints to supervisors regarding the hostile work environment and the initiation of an EEO complaint.  This harassment, bullying, and retaliation eventually caused Ms. Vazquez to suffer a stress-induced seizure while on the job and forced Ms. Vazquez to take medical disability leave, during which time she was terminated.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331, in that this case arises under federal law, specifically, Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17.

5. Venue is proper within this District under 28 U.S.C. §§ 1391, because the events giving rise to Plaintiff's claims occurred in this District, including the acts of discrimination, harassment, and retaliation.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Ms. Vazquez initiated charges with U.S. Equal Employment Opportunity Commission ("EEOC") on June 30 2014.  She filed a formal EEOC complaint against TSA on November 14, 2014.  On August 24, 2018, the EEOC issued Ms. Vazquez a Notice of Right to Sue, which she received on or about August 27, 2018.

7. Pursuant to 42 U.S.C. §§ 2000e-16(c), Ms. Vazquez timely filed this present action on November 19, 2018 and has complied with all administrative prerequisites to bring this lawsuit.

## PARTIES

8. Plaintiff Tonette L. Vazquez is an African American Latina mother.

9. From September 23, 2012 to August 26, 2014, Ms. Vazquez was employed as a Transportation Security Officer ("TSO") by the TSA.

10. Defendant is a federal agency within the United States Department of Homeland Security and has continuously employed at least fifteen employees during the relevant time period. Defendant is therefore an "employer" within the meaning of Title VII.

## FACTUAL ALLEGATIONS

11. Defendant hired Ms. Vazquez as a TSO on September 23, 2012.

12. Ms. Vazquez's responsibilities at the TSA included providing security and protection of air travelers, airports and aircraft; operating many different types of screening equipment and technology to identify potentially dangerous objects in baggage, on passengers, or being transported to aircraft; and interacting with passengers.

13. During her employment as a TSO, Ms. Vazquez received positive evaluations from her superiors, including TSO Supervisor Domingo Sanchez and Transportation Security Manager Michael Simmons. For example, on October 10, 2013, Plaintiff "Exceeded Expectations" in her performance appraisal. On March 29, 2014, Plaintiff received a "very good" Core Competencies Evaluation. On April 18, 2014, Plaintiff received a "very good" Transportation Officer Performance Systems evaluation.

14. The TSA also awarded Ms. Vazquez for her work performance, including through cash awards, letters of recognition, a commemorative metal coin, and an article that described her as an outstanding TSO. For example, on May 1, 2014, Ms. Vazquez was awarded the "$100 On-the-Spot Award" for her "excellent awareness and vigilance." Upon information and belief, on or around August 2014, Ms. Vazquez was also mentioned in an internal newsletter, "TSA Across America Briefing," for being an outstanding TSO.

15. On March 23, 2013, Ms. Vazquez notified TSA Human Resource Specialist Kathy Barry via email that she was pregnant, stating that she was due in November 2013. Before March

1   2013, Ms. Vazquez felt respected by her co-workers and supervisors. After announcing her
2   pregnancy, however, Ms. Vazquez felt a drastic change in the workplace environment.
3       16.     Ms. Vazquez obtained approval from TSA to take maternity leave from November
4   11, 2013 to February 9, 2014.
5       17.     During the second trimester of Ms. Vazquez's pregnancy in 2013, Ms. Vazquez
6   requested a transfer to the Oakland Airport headquarters, the Oakport Office, which is the local
7   base for human resources, training, and other similar operations. Ms. Vazquez requested this
8   transfer due to her recent diagnosis of gestational diabetes, which required her to regularly test
9   her blood sugar, and because, upon information and belief, the Oakport Office had easier access
10  to running water allowing Ms. Vazquez to wash her hands after handling needles. She had a
11  conversation with TSA Human Resource Specialist Andrea Cabida regarding her request and the
12  two discussed other women that were permitted to transfer to the Oakport Office during their
13  pregnancies for health-related reasons. Nevertheless, Ms. Cabida denied Ms. Vazquez's request,
14  stating that gestational diabetes was not an illness.
15      18.     Upon information and belief, pregnant employees not of Plaintiff's race or national
16  origin, for example Asian TSA employee Kieu Ton, were routinely permitted to transfer to
17  Oakport. However, upon information and belief, another pregnant African American TSO who
18  went by the name "Princess," was also denied permission to transfer to Oakport during her
19  pregnancy. Moreover, upon information and belief, another African American TSO, Rhonda
20  Amos, was similarly denied permission to transfer to Oakport due to a medical condition and was
21  later terminated.
22      19.     Ms. Vazquez was eventually allowed to transfer to Oakport only four days before
23  her planned maternity leave.
24      20.     Prior to going on maternity leave, and consistent with the requirements of the Fair
25  Labor Standards Act (29 U.S.C. §207(r)) and the TSA's Management Directive 1100.63-1, Ms.
26  Vazquez notified Andrea Cabida, Kathy Barry, and Kandis Smith, that, upon returning from
27  maternity leave, she would need a private room with a sink and running water to express
28  breastmilk.

21. Andrea Cabida denied Ms. Vazquez's request and explained that Ms. Vazquez should be okay with expressing breastmilk in a restroom.

22. Ms. Vazquez left for maternity leave starting on November 11, 2013.

23. While on maternity leave, Ms. Vazquez followed up with Andrea Cabida, Kathy Barry, and Kandis Smith regarding her previous request for a private room to express breastmilk. Kandis Smith and Andrea Cabida told Ms. Vazquez that a room would be ready for her to express breastmilk upon her return from maternity leave.

24. Ms. Vazquez returned to work as scheduled on February 9, 2014.

25. Upon Ms. Vazquez's return from maternity leave, she was temporarily assigned to Oakport for additional trainings. While Ms. Vazquez was at Oakport, the TSA assigned her a small corner of a male supervisor's cluttered desk to express milk.

26. When Ms. Vazquez returned to work at the airport terminal, no room was ready for her to express breastmilk, and she was initially placed in the Terminal 2 Supervisor's Office.

27. On a daily basis, other TSA employees would bang on the door, interrupt, and shout at Ms. Vazquez to return to work while she expressed milk in the Terminal 2 Supervisor's Office during her allotted break time.

28. For example, starting on or about February 2014, while Ms. Vazquez was expressing milk during her 15-minute breaks in the Terminal 2 Supervisor's Office, Transportation Security Manager Dawn Flanagan would regularly bang on the door, shout Plaintiff's name, ask her to hurry up, and tell her that she should not be in the room.

29. On numerous occasions, while expressing milk in the Terminal 2 Supervisor's Office, Ms. Vazquez was forced to stop expressing breastmilk when other TSA employees, such as Lead TSO Teame Woldegabriel and Dawn Flanagan, claimed that they needed to get their personal belongings, do paperwork, get items from the stockroom, or use the computers. These actions invaded Ms. Vazquez's privacy, made her constantly fearful of intrusion, caused her to spill breastmilk on several occasions, and took away from her short 15-minute breaks.

30. On February 9, 2014, after complaining about these constant interruptions to Dawn Flanagan and TSO Supervisor Jasmine Johnson, Ms. Vazquez was instructed to use a computer

1  control room, which she shared with another African-American breastfeeding female TSO, Atraiu
2  Williams.

3     31. Thereafter, Ms. Vazquez was moved back and forth between the Terminal 2
4  Supervisor's Office and the computer control room to express milk.

5     32. The computer control room was covered in dust and grime. In addition, as
6  discussed in greater detail below, other TSA employees constantly entered the computer control
7  room and regularly moved her personal belongings.

8     33. On or around February 2014, Ms. Vazquez advised TSO Supervisor Domingo
9  Sanchez of the unsanitary conditions of the computer control room. Domingo Sanchez called Ms.
10 Vazquez a "janitor" and said that it was her responsibility to clean the computer control room
11 since she uses it to express milk.

12     34. None of the rooms that the TSA provided Ms. Vazquez were in conformance with
13 the TSA's internal guidelines for maternity accommodations. For example, internal guidelines
14 required that "[e]mployees will be provided a place, other than a bathroom, that is *shielded from*
15 *view and free from intrusion from coworkers and the public* which may be used to express breast
16 milk." TSA Handbook to Management Directive 1100.63-1 (revision 6, dated 10/5/2011)
17 (emphasis added).

18     35. The computer control room was passcode protected, and Ms. Vazquez was not
19 given the passcode. To enter the room to express milk, Ms. Vazquez had to request a supervisor
20 to open the door. Ms. Vazquez repeatedly requested the passcode to the room, but Defendant
21 never provided it to her.

22     36. Upon information and belief, other similarly situated male TSA employees, such
23 as TSO Steve Paleo, were given the passcode and could access the computer control room
24 without asking for prior permission.

25     37. Ms. Vazquez was subject to strictly enforced 15-minute breaks and was required to
26 notify a supervisor every time she wished to take a break.

38. Upon information and belief, similarly situated employees outside Ms. Vazquez's protected class were frequently permitted to take unlimited medical breaks, blood test breaks, and smoking breaks outside their 15-minute break whenever they needed.

39. Upon information and belief, similarly situated employees outside Ms. Vazquez's protected class could extend lunch breaks to account for the time needed to purchase food, and use the restroom at any time without seeking permission. For example, upon information and belief, similarly situated employee Steve Paleo could take extended lunch breaks that did not include the time it took to purchase food.

40. Upon information and belief, when Ms. Vazquez's personal belongings were in the breakroom, other TSA employees searched through Ms. Vazquez's bags, ripped off the cover of her Devotional Bible, opened her bags containing breastmilk expression equipment, and took and hid her lunch.

41. Upon information and belief, other TSA employees, such as Domingo Sanchez and Transportation Security Manager Tai Lan, would search through Plaintiff's bags in the computer control room and place her breastmilk expression equipment on a table in plain view.

42. Upon information and belief, Domingo Sanchez would degrade and treat Ms. Vazquez like an animal. On numerous occasions, Domingo Sanchez would instruct Ms. Vazquez to come to him by pointing to the ground as if he were communicating with a dog. Ms. Vazquez has witnessed Domingo Sanchez treat TSOs outside of her protected classes (for example, non-black and non-parenting employees), such as, Virginia Parilla, Steven Bang, and Jacqueline Fuller, in a respectable and non-hostile manner.

43. Upon information and belief, while Ms. Vazquez was still pregnant, TSO Paula Barrett made comments towards Ms. Vazquez regarding her weight, making her feel like a pig.

44. Upon information and belief, Steve Paleo told Ms. Vazquez that she was "a disgrace to the Mexican people."

45. On April 26, 2014, during the beginning of Ms. Vazquez's break, Lead TSO Virginia Parilla entered the employee breakroom, yelled at Ms. Vazquez to get back to work, and refused to allow Ms. Vazquez to express her breastmilk.

46. On June 26, 2014, TSO Supervisors Domingo Sanchez, Jasmine Johnson, and Darryl Robinson called a meeting with Ms. Vazquez where they falsely accused her of taking extended breaks and instructed her to provide a verbal schedule for expressing milk. Ms. Vazquez requested and was denied union representation. On the same day, Ms. Vazquez reported the false accusations and the hostile meeting to Michael Simmons, who smirked and told her that he was the one who gave the supervisors permission to call the meeting.

47. On June 27, 2014, Michael Simmons had a discussion with Ms. Vazquez, telling her that she "was not a part of the agency's family," that she was "on the outside looking in," and "no matter what, the supervisors are always correct." The conversation ended in Michael Simmons, her white male supervisor, making a derogatory comment regarding Ms. Vazquez's race (African American), yelling: "Tonette you are not going to lose your job, not even Obama can take your job away from you!"

48. On the same day, Ms. Vazquez sent an email to Kandis Smith detailing the hostile meeting, the false accusations, and the harassment and bullying by her coworkers and supervisors.

49. On June 30, 2014, Plaintiff initiated the EEOC process by contacting TSA's Civil Rights Division to make an informal complaint of unlawful discrimination.

50. After initiating the informal EEO complaint process on June 30, 2014, the harassment and bullying towards Ms. Vazquez intensified.

51. Ms. Vazquez made numerous informal and internal complaints to supervisors regarding her supervisors' harassment and discriminatory conduct. However, the bullying and misconduct only worsened.

52. On July 3, 2014, Ms. Vazquez removed an oversized liquid from a passenger's bag, per TSA guidelines. Virginia Parilla publicly degraded Ms. Vazquez, shouting that she did not know what she is doing and that it is wrong to take a 12-ounce liquid, despite the fact that TSO Supervisor Peter Lopez stated that Ms. Vazquez was correct in removing the oversized liquid. Upon information and belief, other employees outside of Ms. Vazquez's protected classes

have removed oversized liquids from passenger bags without being harassed, bullied, or degraded by coworkers.

53. On the same day, July 3, 2014, Ms. Vazquez reported this incident and the hostile work environment to Transportation Security Managers Michael Simmons and Nicholas Ferreira and requested that she be relocated to another terminal.

54. Michael Simmons acknowledged Ms. Vazquez's request but never took any action to remove Ms. Vazquez from the hostile work environment.

55. On July 15, 2014, Ms. Vazquez verbally complained to Transportation Security Manager Sheila Danabar about the hostile work environment. However, Sheila Danabar also failed to take any action to remove Ms. Vazquez from the hostile work environment.

56. On July 17, 2014, fed up with the lack of privacy in the computer control room where she expressed milk, Ms. Vazquez voiced her concerns to TSO Supervisors Khai Pham and Domingo Sanchez. Khai Pham became upset, confrontational, and raised his voice, telling her that the TSA would not make any accommodations for her.

57. Later on the same day, while working as a bag checker in Terminal 2, Khai Pham demeaned Ms. Vazquez by instructing her to leave her post to clean up other TSOs' trash. On information and belief, Kai Pham did not ask any other similarly-situated employees outside Ms. Vazquez's protected classes to pick up other TSOs' trash.

58. On July 18, 2014, Plaintiff sent a lengthy email complaint to Kandis Smith and Joseph Rodrigues (also a TSA Assistant Federal Security Director) detailing Khai Pham's conduct and explaining how she felt she was being treated like a slave. In a separate e-mail to Kandis Smith on the same day, Ms. Vazquez described the lack of privacy in the computer control room, including how Domingo Sanchez and Tai Lan moved her items and embarrassed her by placing her maternity equipment in plain view.

59. Less than a week after Ms. Vazquez made these complaints, Tai Lan refused to open the computer control room for Ms. Vazquez during her authorized 15-minute break to express milk.

60. On July 25, 2014, while working as an X-ray operator, Ms. Vazquez witnessed another TSO, Bernardo Novicio, conduct an improper bag check. Ms. Vazquez notified Khai Pham of Bernardo Novicio's violation of the TSA's Standard Operating Procedures. Khai Pham responded in a hostile manner, removed Ms. Vazquez as an X-ray operator, and angrily instructed her to move to the bag checker position. After doing so, Ms. Vazquez asked Khai Pham for a restroom break and to speak to a manager, which Khai Pham approved. As she began walking to Terminal One to speak with a manager, however, Khai Pham obstructed her path and forced her to fill out a witness statement report in the presence of two other TSO Supervisors Domingo Sanchez and Jasmine Johnson. When Ms. Vazquez was finally allowed to leave to speak with a manager, she collapsed, suffered a stress-induced seizure, and was taken to a local hospital via ambulance.

61. Ms. Vazquez was forced to take medical leave after her seizure on July 25, 2014.

62. Ms. Vazquez started a claim for workers compensation. However, TSA employees made it very difficult for Ms. Vazquez and did not cooperate with her requests regarding the worker's compensation paperwork, which resulted in its late filing.

63. While on medical leave, in accordance with TSA's request, Ms. Vazquez sent a letter written by her doctor Joel Ambrosio, MS, PA-C, dated August 20, 2014, which stated that Ms. Vazquez "recently had a seizure and fall at work which had rendered her completely disabled and unable to work from 7/25/14 through 11/1/14," and to "[p]lease excuse her from work during this period."

64. The TSA terminated Ms. Vazquez's employment via a letter dated August 26, 2014, less than two months after she initiated her EEO Complaint alleging unlawful discrimination and harassment and merely weeks after her subsequent complaints to her supervisors about the harassment and discriminatory conduct she was experiencing.

65. According to the letter, the TSA terminated Ms. Vazquez's employment based on her purported "failure to follow policies, disrespectful conduct toward multiple supervisors and failure to follow directions from your supervisor or other management officials." The letter alleged that Ms. Vazquez failed to follow her supervisor's orders during the July 25, 2014

incident and stated that Ms. Vazquez failed to comply with subsequent emails sent by Dawn Flanagan and Nicholas Ferreira on August 20, 2014 and August 21, 2020 requesting Ms. Vazquez to provide a written statement regarding the incident and to appear at the TSA office to complete necessary documentation.

66. The reasons provided by Defendant for Ms. Vazquez's termination are pretext. Defendant's allegations regarding Ms. Vazquez's behavior are inconsistent with the positive performance reviews and awards she received during her employment.

67. In fact, Ms. Vazquez had not failed to follow TSA policies or acted disrespectfully toward her supervisors; rather, she had spoken up and complained about the harassing and discriminatory conduct she had experienced on account of her race, color, national origin, and lactating status.

68. Moreover, after the July 25, 2014 incident, and upon receipt of the emails from Dawn Flanagan and Nicholas Ferreira asking Ms. Vazquez to provide a witness statement, Ms. Vazquez timely replied via email, stating: "I am unable to provide this at this moment. This is to[o] stressful and affecting my health very badly." At the time, Ms. Vazquez was still disabled from the stress caused by the July 25, 2014 incident and was not medically cleared by her doctor to return to work.

69. Despite her medical condition, the TSA terminated her employment and cited her failure to appear as a reason for the termination.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Discrimination on the Basis of Race, Color, or National Origin**

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*)**

70. Plaintiff re-alleges and incorporates herein the allegations set forth above.

71. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of…race, color…or national origin." 42 U.S.C. §2000e-2(a).

72. Ms. Vazquez is a member of a protected class on the basis of race, color, and/or national origin. She is an African-American Latina.

73. Plaintiff suffered adverse employment actions that materially affected her terms, compensation, conditions, or privileges of employment, including, but not limited to, termination on August 26, 2014.

74. Ms. Vazquez's status as an African-American Latina was the determining factor and/or a motivating factor in Defendant's actions.

75. Defendant discriminated against Ms. Vazquez by treating her differently from her non-African American Latina co-workers at the TSA.

76. Upon information and belief, similarly situated pregnant employees outside of Ms. Vazquez's race and/or national origin were routinely permitted to transfer to the Oakport Office upon request due to medical conditions, while Ms. Vazquez was denied transfer only until four days before her pregnancy leave.

77. Upon information and belief, similarly situated lactating female employees not of Ms. Vazquez's race and/or national origin were provided private rooms without interruptions to express breastmilk. Defendant treated Ms. Vazquez and other African-American employees differently. For example, Defendant initially told Ms. Vazquez that she and an African American TSO known as "Princess" would be required to express milk in a bathroom. Even after Ms. Vazquez was ultimately given the Terminal 2 Supervisor's Office and the computer control room to express milk, these rooms did not conform to TSA policies and she was subject to frequent interruptions and bullying from other TSA employees.

78. Upon information and belief, TSO Supervisors only asked Ms. Vazquez and other African-American employees to pick up trash in the terminals.

79. Upon information and belief, TSA employees of a race different from Ms. Vazquez were allowed lenient breaks while Ms. Vazquez was subject to strictly timed 15-minute breaks to express milk. For example, employees outside Ms. Vazquez's race and national origin were frequently permitted to take unlimited smoking breaks, extend lunch breaks to account for the time needed to purchase food, and use the restroom at any time without seeking permission.

1  Upon information and belief, similarly situated employee Steve Paleo would take extended lunch
2  breaks that did not include the time it took to purchase food.

3  80.  As a direct, legal, and proximate result of Defendant's discrimination, Plaintiff has
4  sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in
5  an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**Discrimination on the Basis of Sex**

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*)**

81.  Plaintiff re-alleges and incorporates herein the allegations set forth above.

82.  Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of…sex." 42 U.S.C. §2000e-2(a).

83.  The Pregnancy Discrimination Act ("PDA"), amending Title VII to prohibit sex discrimination on the basis of pregnancy, requires that "women affected by pregnancy, child-birth, or other related medical conditions shall be treated the same for all employment-related purposes…as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

84.  Per the EEOC Enforcement Guidance on Pregnancy Discrimination and Related Issues (June 25, 2015), lactation is a pregnancy-related medical condition.

85.  During the relevant period, Ms. Vazquez was a member of a protected class on the basis of sex. She was a pregnant and/or lactating mother.

86.  Plaintiff suffered adverse employment actions that materially affected her terms, compensation, conditions, or privileges of employment, including, but not limited being required to clean and maintain the computer control room cleaned since she used it to express milk and being terminated from employment on August 26, 2014.

87.  Ms. Vazquez's status as a pregnant and lactating mother was the determining factor and/or a motivating factor in Defendant's actions.

88. Defendant discriminated against Ms. Vazquez by treating her differently from her male, non-pregnant, and non-lactating female coworkers, including but not limited to, subjecting her to strictly timed 15-minute breaks, failing to provide her with a room that conformed to TSA policies, requiring her to notify supervisors when she needed to express milk, and not providing her with the passcode to enter the computer control room, despite her repeated requests for the passcode.

89. Upon information and belief, Defendant accommodated other non-pregnant and/or non-lactating employees with disabilities or medical conditions that required reasonable accommodations during the workday. For example, similarly situated male, non-pregnant, and non-lactating female coworkers could take medical breaks, blood test breaks, and smoke breaks outside their 15-minute break whenever they needed and without interruptions.

90. Upon information and belief, similarly situated male employees were given the passcode to enter the computer control room. Additionally, similarly situated employees who were not pregnant or lactating were not required to notify supervisors when they wished to take a break.

91. As a direct, legal, and proximate result of Defendant's discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**Retaliation**

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*)**

92. Plaintiff re-alleges and incorporates herein the allegations set forth above.

93. Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

94. Plaintiff engaged in protected activities consisting of, among other things:

    a. requesting a private and reasonable lactation location;

    b. requesting that the TSA maintain a hostile-free work environment,

including that her co-workers and supervisors stop harassing her;

c. lodging internal complaints of harassment and discrimination; and

d. initiating charges with the EEOC.

95. As a result of Ms. Vazquez's protected activities, Defendant's agents and/or employees took material and adverse employment actions against her, including creating, permitting, and supporting a hostile work environment and improperly terminating Ms. Vazquez.

96. Upon information and belief, Defendant's agents and/or employees, including those responsible for material and adverse employment actions, were aware of Ms. Vazquez's protected acts.

97. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

98. As a direct, legal, and proximate result of Defendant's retaliation, Ms. Vazquez has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Hostile Work Environment

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*)**

99. Plaintiff re-alleges and incorporates herein the allegations set forth above.

100. Ms. Vazquez was subjected to verbal and physical conduct of a discriminatory nature by Defendant's agents and employees because of her color, race, and/or national origin, an African-American Latina.

101. Ms. Vazquez was subjected to verbal and/or physical conduct of a discriminatory nature by Defendant's agents and employees because of her sex and status as a pregnant and/or lactating mother.

102. For example, upon information and belief, at least the following TSA employees created a hostile environment by verbally harassing Ms. Vazquez:

a. Steve Paleo told Ms. Vazquez that she was "a disgrace to the Mexican people."

b. Paula Barrett made comments towards Ms. Vazquez regarding her weight during

Ms. Vazquez's pregnancy that made her feel like a pig.

    c. Michael Simmons yelled: "Tonette you are not going to lose your job, not even Obama can take your job away from you!"

103. As alleged above, discriminatory conduct involved daily interruptions and intrusions, bangs on the door, and hostility towards Ms. Vazquez while she was expressing milk during her allotted breaks. Other employees searched through Ms. Vazquez's personal belongings and embarrassed her by placing her maternity equipment in plain view. Ms. Vazquez was also required to clean other TSO's trash and was falsely accused of taking extended breaks when expressing her milk.

104. These acts, among others, resulted in the workplace being permeated with discriminatory intimidation, ridicule, and insult.

105. The conduct by Defendant's agents and employees was not welcomed by Ms. Vazquez. She often felt treated like she was an animal or a slave.

106. The conduct was so severe or pervasive that reasonable persons in Ms. Vazquez's position would find their work environment to be hostile or abusive.

107. Ms. Vazquez believed her work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct. As a result of the hostile work environment, Ms. Vazquez suffered a stress-induced seizure while on the job.

108. Management level employees knew, or should have known, of the abusive conduct. Ms. Vazquez provided management level personnel, including Sheila Danabar, Michael Simmons, Khai Pham, Domingo Sanchez, Kandis Smith, Joseph Rodriguez, Dawn Flanagan, Anton Seaton, among others, with information sufficient to raise a probability of unlawful harassment in the mind of a reasonable employer. Moreover, management level employees were themselves complicit in the abusive conduct.

109. Defendant did not exercise reasonable care to prevent harassment in the workplace and did not exercise reasonable care to promptly correct any harassing behavior that did occur. Ms. Vazquez made requests to be transferred away from the hostile work environment, but her requests were refused.

110. As a direct, legal, and proximate result of Defendant's hostile work environment, Plaintiff has sustained, and will continue to sustain, economic, emotional, and medical injuries, resulting in damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tonette L. Vazquez respectfully requests the following relief:

111. For a declaration that Defendant's actions and practices as alleged herein are unlawful;

112. Compensatory economic damages including, but not limited to, front pay, back pay, lost value of benefits, costs of appropriate medical treatment, and costs of lost wages and finding replacement employment, in an amount to be proven at trial, and as allowed by law;

113. Compensatory non-economic damages, including, but not limited to, past and future pain, suffering and emotional distress, in an amount to be proven at trial, and as allowed by law; and

114. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all causes of action and claims to which she has a right to a jury trial.

Dated: March 16, 2020

Respectfully submitted,

DECHERT LLP

By: */s/ Nisha Patel*

Jonathan D. Loeb (State Bar No. 211749)
jonathan.loeb@dechert.com
Nisha Patel (State Bar No. 281621)
nisha.patel@dechert.com
Charles Hsu (State Bar No. 328798)
charles.hsu@dechert.com
3000 El Camino Real, Suite 650
Palo Alto, CA 94306
Telephone: +1 650 813 4800
Facsimile: +1 650 813 4848

Attorneys for Plaintiff
TONETTE L. VAZQUEZ