UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONETTE L. VAZQUEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALEJANDRO MAYORKAS,<br><br>                    Defendant. | Case No.  18-cv-07012-JCS<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT**<br><br>Re: Dkt. No. 126 |

## I.      INTRODUCTION

Plaintiff Tonette Vazquez brought this action asserting discrimination and harassment claims against Defendant the Secretary of Transportation (the "Secretary") based on Ms. Vazquez's former employment with the Transportation Security Administration ("TSA").  The Secretary moves to enforce a settlement agreement placed on the record at a settlement conference before the Honorable Sallie Kim.  The Court held multiple evidentiary hearings to hear testimony from Ms. Vazquez and her former pro bono attorneys.  For the reasons discussed below, the Secretary's motion is GRANTED.[1]

## II.     BACKGROUND

Ms. Vazquez initially filed and pursued this case pro se.  In December of 2019, the Court appointed pro bono counsel to represent her.  *See* dkt. 65.

On June 23, 2020, the parties appeared for a judicial settlement conference before the Judge Kim.  After negotiations that occurred off the record, the following exchange was placed on the record:

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

THE COURT: . . . . Counsel, make your appearances starting with Plaintiff's Counsel.

MR. LOEB: Jonathan Loeb, Nisha Patel, and Charles Hsu of Dechert, LLP.

THE COURT: Thank you. And Defense Counsel.

MR. SAMPLES: This is Wes Samples, AUSA. And with me agency counsel Molly Denning.

THE COURT: Thank you. So, Mr. Samples is going to state the terms of the settlement agreement and I'll ask if everyone agrees to them. Go ahead, Mr. Samples.

MR. SAMPLES: So, this matter has been settled for $50,000. The parties intend to exchange a draft settlement agreement tomorrow which will be June 24th. And as a courtesy, the TSA will further follow up  regarding the questions that plaintiff have posed regarding what the TSA does when someone calls the TSA and asks for a reference.

THE COURT: Okay. Great. And so, Ms. Denning, does that reflect your understanding of the settlement agreement?

MS. DENNING: Yes, Your Honor.

THE COURT: Okay. And Mr. Loeb?

MR. LOEB: Yes, it does, Your Honor.

THE COURT: Okay. Thank you. Is that it? Great. Okay. I'm going to stop the recording.

June 23, 2020 Settlement Conference Tr. (dkt. 168).

Within weeks after the settlement conference, Ms. Vazquez's then-attorneys moved to withdraw as counsel.  Dkt. 101.  During an ex parte proceeding on that motion, the Court discussed the circumstances of the settlement conference with Ms. Vazquez and her attorneys.[2] Ms. Vazquez stated that she felt intimated by the attorneys and the settlement judge at the settlement conference, and was not comfortable expressing her concerns about the proposed settlement.  She stated, however, "I agreed to the position that was going to be offered with the

---

[2] The Court previously ordered that ex parte proceeding unsealed based on Ms. Vazquez assertion that her attorneys acted without authorization, which waived attorney-client privilege as to whether her attorneys were authorized to enter a settlement on her behalf.  *See* Order re Waiver of Privilege (dkt. 136) (citing *AT & T Mobility LLC v. Yeager*, No. 2:13-cv-0007-KJM-DAD, 2014 WL 6633374, at *5 (E.D. Cal. Nov. 21, 2014)).

1    other side." Aug. 21, 2020 Hr'g Tr. (dkt. 148) at 34:13–14.  In an effort to understand Ms.

2    Vazquez's explanation of her position, the Court stated, "you agreed to a settlement with them

3    only because they shut you down," to which Ms. Vazquez responded, "Right."  *Id.* at 36:10–13.

4    Ms. Vazquez explained that she only disputed the settlement agreement some days later:

5               MS. VASQUEZ:  It was -- I don't even know how many days it was
6               either.  I think it was, like, maybe two or three days after [the
                settlement conference].  And I said, "I'm going to get the guts.  I'm
                just going to tell them, no, I reject this."  And I couldn't tell them why
7               because -- I couldn't tell them why because I – I just said that -- you
                know, I told them also over the phone what was going on on the
8               phone, but I didn't put it on an e-mail. . . .

9    *Id.* at 35:7–14.

10        After several months in which Ms. Vazquez unsuccessfully sought new attorneys, the

11   Secretary filed a motion on March 26, 2021 to enforce the settlement agreement placed on the

12   record by Judge Kim.  Mot. (dkt. 126).

13        At a May 28, 2021 evidentiary hearing, Ms. Vazquez testified that she did not recall

14   agreeing to a settlement or authorizing her attorneys to enter a settlement agreement.  May 28,

15   2021 Hr'g Tr. (dkt. 153) at 21:23–23:29.  She remembered "trying to say something, and [she]

16   was quieted," *id.* at 22:24–25, and having been "spoken over when [she] was trying to say

17   something," *id.* at 25:23–25.  Ms. Vazquez remembered Judge Kim "saying something, and it was

18   something about you have more time to think about this."  *Id.* at 26:20–22.  Ms. Vazquez felt that

19   she was "railroaded" during the settlement conference, and testified that Judge Kim showed her

20   other settlements that Ms. Vazquez did not feel were analogous to her case, but did not let her

21   keep a copy of that information.  *See id.* at 28:13–30:24.  According to Ms. Vazquez, Judge Kim

22   at one point did not let her speak, saying that she "already kn[ew] about that," when Ms. Vazquez

23   had intended to tell Judge Kim something new that Judge Kim did not already know.  *Id.* at 31:21–

24   32:4.  Ms. Vazquez did not remember at the May 28, 2021 hearing what she had intended to tell

25   Judge Kim.  *Id.* at 32:19–33:4.  Ms. Vazquez repeatedly testified that she sent her attorneys an

26   email after the settlement conference had concluded expressing her desire to reject the settlement.

27   *E.g.*, *id.* at 33:20–34:16, 37:2–4, 43:25–44:13.  At the conclusion of the May 28, 2021 evidentiary

28   hearing, defense counsel requested a further evidentiary hearing with testimony from Ms.

United States District Court
Northern District of California

1   Vazquez's former lawyers, as well as limited written discovery.  *Id.* at 53:8–20.

2        On June 14, 2021, Ms. Vazquez filed a copy of certain emails she exchanged with her

3   then-attorneys, including an email dated June 26, 2020—three days after the settlement

4   conference—reading as follows:

5        Good morning,

6        I hope all is well.

7        After considering this settlement, it is my opinion that I should NOT
     accept the $50,000 due to all of the harm that has been done to me.

8        Therefore, we should be prepared to move to trial unless, a much
     acceptable offer is provided. After much consideration, this is my

9        position and I reject the $50,000 offer,

10       Thank you,

11       Tonette Vazquez

12   Dkt. 144 at 3/7.

13       On October 19, 2021, the Court held a second evidentiary hearing to take testimony from

14   Ms. Vazquez's former attorneys.  Jonathan Loeb testified that he represented Ms. Vazquez from

15   some time in 2019 until the Court granted his and his colleagues' motion to withdraw as counsel

16   in 2020 based on irreconcilable differences.  Oct. 19, 2021 Hr'g Tr. (dkt. 187) at 10:16–11:4.  Mr.

17   Loeb and his colleagues believed that Ms. Vazquez had reached a binding settlement at the June

18   23, 2020 settlement conference, where Mr. Loeb and his colleagues represented her, while "Ms.

19   Vazquez decide that she did not want to go through with settlement."  *Id.* at 11:7–12:7; *see also id.*

20   at 25:19–26:20.

21       Mr. Loeb testified that multiple offers were exchanged at the settlement conference and

22   Ms. Vazquez unambiguously rejected all offers by the Secretary until the final offer of $50,000.

23   *Id.* at 12:14–13:16.  The settlement conference concluded with Mr. Loeb "informing the Court and

24   the Government that a settlement had been reached."  *Id.* at 14:6–10.  At some point shortly before

25   or after the settlement was placed on the record, Ms. Vazquez and Judge Kim had a conversation

26   where Ms. Vazquez was crying.  *Id.* at 14:10–16.  In Mr. Loeb's view, Ms. Vazquez "seemed to

27   be extremely joyful and thanked everybody, the lawyers, the Judge, about concluding the

28   mediation."  *Id.* at 14:16–18.  He testified that the agreement was orally placed on the record at

United States District Court
Northern District of California

United States District Court
Northern District of California

Ms. Vazquez's authorization, and that Ms. Vazquez never signed any written agreement. *Id.* at 26:21–25.

Mr. Loeb testified that before communicating to the Court that Ms. Vazquez accepted the offer of $50,000, he and his colleagues "had a quite long conversation" of thirty minutes or more with Ms. Vazquez regarding "the pluses and minuses of accepting the settlement," after which "Ms. Vazquez informed [them] that she wanted to accept the $50,000 offer." *Id.* at 15:1–7. Mr. Loeb did not recall the exact words that Ms. Vazquez used to accept the settlement, but characterized her acceptance as "unambiguous." *Id.* at 15:8–13. Mr. Loeb did not believe he "expressly said [to Ms. Vazquez], 'After this point you cannot change your mind,'" but he "did explain to her that it was going to be over when . . . we put it on the record with the Court." *Id.* at 18:13–24.

Mr. Loeb did not believe that Ms. Vazquez was pressured into accepting the settlement, and did not recall her telling him during the settlement conference that she felt "railroaded" by her attorneys, although she told him either at the settlement conference or at some earlier time "that [she] felt that [she] had been railroaded by the Government." *Id.* at 15:19–23, 21:11–23:1. On questioning by Ms. Vazquez, he did not recall Judge Kim telling Ms. Vazquez that she already knew what Ms. Vazquez was going to say, and he testified that in general, he did not perceive a need to intervene to ensure that Ms. Vazquez was heard, because Ms. Vazquez and Judge Kim "had an extremely long discussion before the settlement was entered." *Id.* at 23:8–22.

Mr. Loeb believed Ms. Vazquez was not included in the recorded portion of the videoconference where the settlement was placed on the record because "that was simply up to Judge Kim," and he did not know why Judge Kim did not include Ms. Vazquez. *Id.* at 17:25–18:6. Mr. Loeb recalled Ms. Vazquez rejecting the settlement days later, after "[s]he had a change of heart." *Id.* at 16:9–22.

Another of Ms. Vazquez's former attorneys, Nisha Patel, generally confirmed Mr. Loeb's testimony. *See id.* at 29:18–44:14. Like Mr. Loeb, Ms. Patel testified that the parties exchanged multiple offers during the settlement conference and that Ms. Vazquez rejected all offers leading up to the final $50,000 offer. *Id.* at 31:10–32:12. Ms. Patel described Ms. Vazquez's acceptance

of that offer as follows:

> I don't recall the exact language she used, but each of us -- Mr. Loeb, myself, and Mr. Hsu -- discussed in turn the pros and cons of accepting a $50,000 offer. And after we finished expressing our opinions, we asked Ms. Vazquez what her opinions were. And, at that point, what I recall is that she enthusiastically accepted.

*Id.* at 32:23–33:3.  Ms. Patel did not believe Ms. Vazquez was pressured to accept the settlement, and testified that she only rejected it in her email days after the settlement was placed on the record.  *Id.* at 33:4–20.  In response to question by the Court as to whether she explained to Ms. Vazquez that the settlement would be binding if Ms. Vazquez accepted it, Ms. Patel testified:

> I don't recall ever discussing with Ms. Vazquez that the settlement agreement would be binding. I don't remember using those words. However, I do recall telling her that if she accepted the settlement, the case would be over.

*Id.* at 35:11–15.

In response to questioning by Ms. Vazquez, Ms. Patel acknowledged that Ms. Vazquez had expressed that she was uncomfortable with Judge Kim.  *Id.* at 36:9–20.  Ms. Patel did not know why Ms. Vazquez was not included in the final portion of the settlement conference where the agreement was placed on the record.  *Id.* at 39:10–18.

Ms. Patel testified that after she and her colleagues had been granted permission to withdraw as counsel, she had conversations with Ms. Vazquez regarding the return of her file where Ms. Vazquez asserted that Ms. Patel had yelled at her, although Ms. Patel denied that she had in fact done so.  *Id.* at 40:3–42:3.

The final attorney, Charles Hsu, provided testimony generally consistent with that of Mr. Loeb and Ms. Patel.  *See id.* at 46:15–53:8.

## III.   ANALYSIS

### A.   Legal Standard

A decision from this district has explained the Court's power to enforce a settlement agreement as follows:

> District courts have the inherent power to enforce a settlement agreement in an action pending before it. See *TNT Marketing, Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). "The moving party has the

United States District Court
Northern District of California

1  burden of demonstrating that the parties formed a legally enforceable
2  settlement agreement." *Woods v. Carey*, 2015 WL 7282749, *4 (E.D.
   Cal. Nov. 18, 2015). "The construction and enforcement of settlement
3  agreements are governed by principles of local law which apply to
   interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753,
4  759 (9th Cir. 1989). This is true even if the underlying cause of action
   is based upon a federal statute. *Woods*, 2015 WL 7282749 at *4. Thus,
5  the Court applies California law "regarding formation and
   interpretation of contracts in determining whether a legally
   enforceable settlement agreement was reached." *Id.*

6  *Madani v. Cty. of Santa Clara*, No. 16-cv-07026-LHK, 2019 WL 402362, at *6 (N.D. Cal. Jan. 31,

7  2019). The Ninth Circuit has cautioned that "the district court may enforce only *complete*

8  settlement agreements," and that "[w]here material facts concerning the *existence* or *terms* of an

9  agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v.*

10  *Near*, 829 F.2d 888 (9th Cir. 1987).

11      The Eastern District of California has addressed the standard for considering a purported

12  oral settlement agreement—particularly where, as here, a further written agreement was

13  contemplated but not completed:

14      In California, an oral agreement may give rise to a binding contract.
15      *Kreling v. Walsh*, 77 Cal. App. 2d 821, 834–35 (1947); *Khajavi v.*
        *Feather River Anesthesia Medical Group*, 84 Cal. App. 4th 32, 61–
16      62 (2000). If two parties reach an oral agreement, that agreement may
        in some cases be enforced even if the parties expected a written
17      agreement would follow. *Khajavi*, 84 Cal. App. 4th at 61–62. A
        negotiated oral agreement becomes binding, even when the parties
18      expected to sign a written agreement, only if the oral agreement's
        terms are "definitely understood." *Id.* at 61 (quoting *Louis Lesser*
19      *Enterprises, Ltd. v. Roeder*, 209 Cal. App. 2d 401, 404–05 (1962));
        *see also Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App.
20      4th 348, 358 (1998) ("[I]f the respective parties orally agreed upon all
        of the terms and conditions of a proposed written agreement with the
21      mutual intention that the oral agreement should thereupon become
        binding, the mere fact that a formal written agreement to the same
22      effect has not yet been signed does not alter the binding validity of
        the oral agreement."). On the other hand, no binding oral agreement
23      exists if "the parties understood that the proposed agreement [was]
        not complete until reduced to formal writing and signed . . . ."
24      *Khajavi*, 84 Cal. App. 4th at 61–62.

25  *AT & T Mobility LLC v. Yeager*, No. 2:13-CV-0007-KJM-DAD, 2014 WL 6633374, at *2 (E.D.

26  Cal. Nov. 21, 2014). The Ninth Circuit has affirmed enforcement of oral settlement agreements

27  placed on the record before a district court. *See generally, e.g.*, *VACC, Inc. v. Davis*, 823 F. App'x

28  474, 475 (9th Cir. 2020); *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002).

The Ninth Circuit has not clearly addressed whether state law or federal common law applies to the question of whether a lawyer appearing in federal court has authority to settle a case on behalf of a client, an issue that has divided other circuits. *See In re Clawson*, 434 B.R. 556, 570–71 (N.D. Cal. 2010) (citing decisions from the Second, Fifth, and Eighth Circuits applying federal common law with a presumption of authority, and decisions from the D.C. and Seventh Circuits applying state law). This Court finds persuasive the district court decisions from within this circuit that have addressed the split of authority and applied state law. *See Yeager*, 2014 WL 6633374, at *4–5; *Anand v. Cal. Dep't of Developmental Servs.*, 626 F. Supp. 2d 1061, 1064–67 (E.D. Cal. 2009); *see also Madani*, 2019 WL 402362, at *9 (asserting that state law applies, without addressing out-of-circuit authority to the contrary).[3] The Court therefore applies California law to the question of whether Ms. Vazquez's then-attorneys had authority to enter a settlement agreement at the June 23, 2020 settlement conference.

In California, "the law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation." *Whittier Union High Sch. Dist. v. Superior Ct.*, 66 Cal. App. 3d 504, 508 (1977). "When a client claims an attorney settled without authority, the court must take evidence on which to base a factual determination." *Clawson*, 434 B.R. at 571 (citing *Bice v. Stevens*, 160 Cal. App. 2d 222, 232–33 (1958)). "Under [Ninth] Circuit precedent, this factual inquiry must take the form of an evidentiary hearing, . . . where plaintiff must bear the burden to show that her previous attorney did not have her authority to settle her claims or that she should not otherwise be bound by her attorney's acts through her subsequent ratification." *Anand*, 626 F. Supp. 2d at 1067 (citing *Callen v. Penn. R.R. Co.*, 332 U.S. 625 (1948); *Callie*, 829 F.2d at 890).

### B. The Parties' Oral Agreement Is Complete

At the conclusion of the settlement conference, Judge Kim asked the parties to "state the terms of the settlement agreement." June 23 Settlement Conference Tr. at 3:13–14. Defense

---

[3] Here, the Secretary asserts that California law governs the issue, Reply at 2–3, and has not argued that a presumption of authority under federal common law should apply.

United States District Court
Northern District of California

1  counsel, Assistant United States Attorney Wesley Samples, stated:

2       So this matter has been settled for $50,000. The parties intend to
3       exchange a draft settlement agreement tomorrow, which will be June
        24th. And as a courtesy, the TSA will further follow up regarding the
        questions that Plaintiff had posed regarding what the TSA does when
4       someone calls TSA and asks for a reference.

5  *Id.* at 3:16–21. Mr. Loeb and an attorney from the TSA confirmed that Mr. Samples's statement

6  reflected their understanding of the settlement. *Id.* at 3:22–4:1.

7       That exchange reflects something close to the minimum necessary to establish a complete

8  settlement agreement. While the three attorneys did not state specifically that the agreement

9  called for the case to be dismissed, the undisputed statement that the "matter *has been settled* for

10 $50,000," *see id.* at 3:16–17 (emphasis added), does not leave room for any other reasonable

11 interpretation. And while the oral agreement placed on the record contemplated a future written

12 settlement agreement, that does not negate its effectiveness so long as "the oral agreement's terms

13 are 'definitely understood.'" *Yeager*, 2014 WL 6633374, at *2 (quoting *Khajavi*, 84 Cal. App. 4th

14 at 61); *see also VACC*, 823 F. App'x at 476–77 (recognizing an oral settlement agreement as

15 binding despite its contemplation of a written agreement that was never completed).

16      To the extent there is any ambiguity as to the terms of the agreement recited on the record,

17 it is dispelled by Ms. Vazquez's former attorney Mr. Loeb's testimony, which the Court finds

18 credible:

19      [Question by Mr. Samples:] And what were the terms of the
        settlement agreement that you reached that day, June 23rd, 2020?
20
        [Answer by Mr. Loeb:] Right. There weren't a lot of terms. The
21      Government was to pay Ms. Vazquez $50,000 in exchange for a
        release.
22

23 Oct. 19, 2021 Hr'g Tr. at 14:19–22. The parties' agreement that the case "ha[d] been settled," *see*

24 June 23 Settlement Conference Tr. at 3:16–17, as well as Ms. Patel's testimony that she

25 understood and explained to Ms. Vazquez that "the case would be over" if Ms. Vazquez accepted

26 the Secretary's offer, Oct. 19, 2021 Hr'g Tr. at 35:14–15, indicate that the parties understood that

27 even though they contemplated a future written settlement agreement, their oral agreement was

28 definite and effective.

United States District Court
Northern District of California

1    While Ms. Vazquez has argued that she did not herself agree to the terms of the

2  settlement—a separate issue discussed below—she has not argued that the terms stated on the

3  record and agreed by counsel were anything less than a complete and definite settlement

4  agreement. *See generally* Opp'n (dkt. 128); Oct. 19, 2021 Hr'g Tr. at 57:20–62:25 (closing

5  argument). The Court concludes that the oral agreement between the attorneys on each side of this

6  case was sufficiently definite and complete to be enforceable.

7    **C.    Ms. Vazquez Has Not Shown That Her Then-Attorneys Lacked Authority**

8    Ms. Vazquez's primary contention, that she "did not agree with a settlement of

9  $50,000.00," Opp'n at 3, amounts to an argument that she did not authorize her attorneys to bind

10  her to the agreement they placed on the record at the settlement conference. Under California law,

11  Ms. Vazquez has the burden to prove that lack of authority as a question of fact. *Anand*, 626 F.

12  Supp. 2d at 1067.

13    Here, Ms. Vazquez's former attorney Ms. Patel testified that she explained to Ms. Vazquez

14  that "the case would be over" if Ms. Vazquez accepted the $50,000 settlement offer, Oct. 19, 2021

15  Hr'g Tr. at 35:14–15, and all three of Ms. Vazquez's former attorneys who were present at the

16  settlement conference testified that she accepted that offer, with Mr. Loeb and Ms. Patel

17  characterizing her acceptance as unambiguous and enthusiastic, *id.* at 15:12–13, 33:2–3, 47:13–14.

18  The Court finds that testimony to be credible. Ms. Vazquez's testimony does not clearly refute

19  her attorneys' assertion that she accepted the offer. At the hearing on her attorneys' motion to

20  withdraw, Ms. Vazquez appeared to concede that she accepted the offer, albeit under what she

21  perceived as undue pressure. Aug. 21, 2020 Hr'g Tr. at 34:13–14, 36:10–13. To the extent any

22  portion of Ms. Vazquez's testimony could be construed as stating that she did not accept the offer,

23  the Court does not find such testimony credible.

24    Ms. Vazquez also has not substantiated her position that her attorneys or Judge Kim

25  unduly pressured her to accept the settlement. The only specific example she has offered of any

26  such pressure is an instance where Judge Kim purportedly told Ms. Vazquez that she already knew

27  what Ms. Vazquez was going to say, during what Ms. Vazquez's attorney Mr. Loeb credibly

28  described as a long and thorough conversation between Ms. Vazquez and Judge Kim regarding the

1   Secretary's offer to settle the case.  The Court does not find that such an exchange negates Ms.

2   Vazquez's decision to accept the offer, and is aware of no authority suggesting as much.

3        The Court finds credible Ms. Vazquez's testimony that she felt uncomfortable at the

4   settlement conference, but that is not unusual.  Judicial settlement conferences and other forms of

5   mediation requires parties to consider high-stakes questions of whether to accept a somewhat less

6   favorable outcome than they might ultimately obtain at trial in exchange for a final resolution of

7   the dispute, and assurance against a *worse* outcome at trial.  Those decisions are often difficult,

8   even for sophisticated litigants and experienced attorneys.  If a party's discomfort at a settlement

9   conference or mediation were itself reason to disregard an agreement that party reached, few

10  settlements would be able to provide the sort of assurance they are intended to.

11       This case is not a model example of a settlement.  It is unfortunate, but likely unavoidable

12  at least to some degree, that Ms. Vazquez felt uncomfortable at the settlement conference.  It is not

13  clear why Ms. Vazquez's attorneys apparently did not use the term "binding" to explain the nature

14  of the Secretary's offer and Ms. Vazquez's decision to accept it, or why Ms. Vazquez was not

15  included in the final portion of the settlement conference and asked to confirm her agreement on

16  the record.  The attorneys also could have been clearer in stating the terms of their agreement on

17  the record.

18       Nevertheless, the Court concludes as a matter of fact that Ms. Vazquez authorized her

19  attorneys to accept an offer of $50,000 after her attorneys explained that accepting the offer would

20  end the case, and that after Ms. Vazquez granted that authority, her attorneys entered an oral

21  agreement on her behalf to dismiss the case in exchange for that payment.  Ms. Vazquez reached

22  the decision to reject the settlement offer only days later, when she sent an email to her attorneys

23  stating that decision.  At that point, the agreement had been reached (with Ms. Vazquez's

24  authorization) and it was too late for Ms. Vazquez to unilaterally withdraw from it.  The

25  Secretary's motion to enforce that agreement is therefore GRANTED.

26  **IV.    CONCLUSION**

27       For the reasons discussed above, the Secretary's motion to enforce the parties' agreement

28  to dismiss this case with prejudice in exchange for payment of $50,000 is GRANTED.  The case is

hereby DISMISSED WITH PREJUDICE in accordance with the parties' agreement, and the Clerk shall enter a judgment of dismissal.  The Secretary is ORDERED to pay Ms. Vazquez $50,000 no later than April 5, 2022.  The Court retains jurisdiction to enforce the terms of that agreement.

The Secretary seeks an order requiring Ms. Vazquez to provide information, including a bank account number and her social security number, to facilitate payment.  The Secretary has not identified any portion of the parties' agreement that requires Ms. Vazquez to do so, and the Court will not require her to provide such information if she has not agreed to.  If Ms. Vazquez refuses to provide sufficient information to allow for a direct deposit or wire transfer, the Secretary may tender payment via check.  That said, the parties are strongly encouraged to reach an agreement as to a method of payment.

If Ms. Vazquez intends to appeal this order, either or both parties may file a motion to stay the Secretary's obligation to pay Ms. Vazquez pending resolution of the appeal.

**IT IS SO ORDERED.**

Dated: February 22, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California